IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NORMAN LaFONTE PRYOR, | ) | CASE NO. 5:20CV2863 |
| | ) | |
| Petitioner, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| WARDEN RONALD ERDOS, | ) | |
| | ) | **REPORT AND RECOMMEN-** |
| Respondent. | ) | **DATION RE RESPONDENT'S** |
| | ) | **MOTION TO DISMISS HABEAS** |
| | ) | **CORPUS PETITION** |

**I.**

Petitioner Norman LaFonte Pryor asks me to reverse what he believes are errors in Ohio law committed in his state criminal case.[1]  Otherwise, he faces the next half century in prison.  His disagreement with the way judges on his case interpreted Ohio law, however, doesn't change the fact that "federal habeas corpus relief does not lie for errors of state law."[2]  Federal habeas corpus law serves as a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through

---

[1] ECF #1, #1-27.
[2] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Rose v. Hodges*, 423 U.S. 19, 21-22 (1975) (per curiam)).  *See also Richmond v. Lewis*, 506 U.S. 40, 51 (1992).

appeal."[3]   The state court record shows no extreme malfunctions of the sort federal habeas law is designed to rectify.

But Pryor's problems are even more fundamental.  He missed the filing deadline by over a half a year with no grounds to justify equitable tolling.  A statute of limitations can be harsh in application to a petitioner, but it too is part of the federal habeas law I must follow.  This report explains why federal law requires me to recommend that the motion of respondent Warden Ronald Erdos to dismiss the petition[4] be granted.

## II.

*Pryor's state criminal charges and trials.*   Pryor is in prison because of crimes committed on August 1, 2016.  The crimes involved kidnapping and raping a nursing student in the parking lot of Aultman Hospital in Stark County, Ohio.[5]   A grand jury charged Pryor with one count of kidnapping, three counts of rape, one count of felonious assault, and one count of failure to give notice of a change of address as a registered sex offender.[6]

Before trial, Pryor decided to represent himself.[7]   This decision led the state to request a competency evaluation.[8]   The trial judge granted the state's motion,[9] and

---

[3] *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  *See also Pollini v. Robey*, 981 F.3d 486, 493 (6th Cir. 2020).
[4] ECF #16.
[5] ECF #16-1, at 241.
[6] *Id.* at 9.
[7] *Id.* at 118.
[8] *Id.* at 131.
[9] *Id.* at 139.

subsequently held a half-day competency hearing[10] during which she found Pryor to be competent to stand trial.[11]   Although Pryor wanted a different doctor to conduct the evaluation, he did not disagree with the competency finding.[12]

Also before trial, Pryor asked in a pro se motion that he be tried separately on count six, which alleged his failure to give notice of a change of address.[13]   Pryor had been previously convicted of a sexually-oriented offense, and was required to register as a sex offender.[14]   The state trial judge agreed with Pryor and granted his motion.[15]

All told, three trials took place.   The first jury convicted Pryor on five of the six counts after a four-day trial during which the state presented 13 witnesses[16] and Pryor presented no witnesses.[17]   For a portion of this case, Pryor represented himself.

On the second trial which was on count six alone, the trial judge declared a mistrial. The jury had heard inadmissible evidence, and the trial judge decided that a curative instruction would not suffice to ensure a fair trial.[18]

At the third trial which again was on count six alone, counsel (previously appointed standby counsel in the trial on the other counts) represented Pryor.   The state presented

---

[10] ECF #16-2, at 272-344.

[11] *Id.* at 298, 301-02.

[12] *Id.* at 299-300.

[13] ECF #16-1, at 180.

[14] *Id.* at 241.

[15] *Id.* at 182.

[16] ECF #16-2, at 669, 1001, 1258.

[17] *Id.* at 1369, 1371.

[18] ECF #16-1, at 197.

three witnesses,[19] and the defense presented none.[20] Later that same day, a jury convicted Pryor on count six.[21] Pryor received a 52-year sentence on his convictions on counts one through five,[22] and a two-year consecutive sentence on his conviction on count six.[23]

*Grounds for federal habeas relief.* There is some confusion in the record over the grounds Pryor asserts for federal habeas relief. His petition presents eleven grounds.[24] His memorandum in support of his petition, however, specifies fourteen "assignments of error,"[25] which are the grounds Erdos quotes in his motion to dismiss.[26] Pryor's memorandum in support of his petition also contains a summary that lists ten grounds with one of those grounds having five subparts.[27]

There is substantial though not perfect overlap among these grounds. Whether Pryor bases his prayer for habeas relief on the eleven grounds he identifies in his petition or additional grounds might have been of greater importance were I to decide Pryor's petition on the merits. I don't need to do that, though.

Six of the grounds relate to errors Pryor feels the state trial judge made during the first trial, the competency hearing, or other proceedings as part of his state criminal case, such as failure to appoint full-time counsel for the competency hearing, failure to allow

---

[19] ECF #16-2, at 1474.
[20] *Id.* at 1474, 1652.
[21] *Id.* at 1652, 1692.
[22] ECF #16-1, at 199.
[23] *Id.* at 200.
[24] ECF #1-27, at 5, 7, 8, 10; ECF #1-5.
[25] ECF #1-6, 10-29.
[26] ECF #16, at 14-21.
[27] ECF #1-6, at 5-7.

Pryor to confront witnesses, the denial of Pryor's request for funds for the DNA investigation, failure to provide Pryor with notice of a suppression hearing, and the admission of hearsay and perjured testimony.  Two of the grounds claim alleged sentencing errors, such as improper consecutive sentencing and the use of an improper sentencing factor.  Two of the grounds relate to alleged errors by his counsel, such as erroneous advice on additional DNA testing or the use of a separate doctor for the competency evaluation. And one of the grounds relates to an alleged Fourth Amendment violation related to Pryor's arrest in Atlanta, Georgia by deputy United States Marshals.

Pryor describes the grounds in his handwritten petition as follows.  For the ease of reading, I have corrected only capitalization errors in these and other quotations from Pryor's filings.

> GROUND ONE: "Trial court did not appoint full-time counsel for competency hearing."
> Supporting facts: "The state requested a competency hearing. Defendant represented himself at the hearing.  Standby counsel did not go over evaluation with the defendant, nor express any opinion on defendants competency.  At the hearing, counsel handed defendant the findings of the report.  Defendant prior to hearing filed a motion requesting a separate evaluation by different Dr. at hospital."[28]

> GROUND TWO: "Trial court errored in sentencing the defendant to consecutive sentencing."
> Supporting facts: "The trial court instructed the jury as follows: 'Before you can find the defendant guilty of kidnapping, you must first beyond a reasonable doubt prove the defendant by force, threat, or deception did remove [victim] … for the purpose of facilitating the commission of a felonious assault and/or rape thereafter…  As a element of the crime for the purpose of guilt by the jury.  Sentenced consecutively for purposes of punishment."[29]

---

[28] ECF #1-27, at 5.
[29] *Id.* at 7.

GROUND THREE: "Violated the right to confront witnesses 6th Amendment."

Supporting facts: "Items collective of the investigation were sent to the BCI crime lab for testing Lindsey Pruneski (analyst) tested items 'only' for the presence of DNA.  Did not test the DNA.  Counsel on cross-examination attempted to question the analyst regarding DNA. Analyst stated she couldn't answer any questions in regard to the defendants DNA testing.  Samuel Troyer also"[30]

GROUND FOUR: "Violation of 4th Amendment, Illegal Search & Seizure."

Supporting facts: "The United States Marshals arrested defendant in Atlanta GA. on August 3, 2016.  The U.S. Marshal arrest report was filed August 3, 2016.  The original complaints for the charges of kidnapping, rape, felonious assault, and FAILURE TO CHANGE ADDRESS were ALL time stamped and filed after the arrest in Atlanta GA.  Prior to the arrest no warrants were issued."[31]

GROUND FIVE: "Trial court abused its discretion when it denied defendant appropriation of funds."

Supporting facts: "The defendant notified the court there was additional male DNA found at the alleged crime scene of an unknown male assailant in the named places by the alleged victim."[32]

GROUND SIX: "Counsel gave defendant erroneous legal advice."

Supporting facts: "The defense counsel instructed the defendant that if the defendant wanted additional DNA testing, the defendant would have to pay for it himself."[33]

GROUND SEVEN: "Counsel gave defendant erroneous legal advice."

Supporting facts: "Psychiatrist conducted a competency evaluation on the defendant.  There were issues, so the defendant then filed a motion requesting (stipulating) for a separate evaluation by a separate doctor. Defense counsel instructed the defendant that if he proceeded this way he would not be able to self represent.  The court denied the motion."[34]

---

[30] *Id.* at 8.

[31] *Id.* at 10.

[32] ECF #1-5, at 1.

[33] *Id.* at 2.

[34] *Id.* at 3.

GROUND EIGHT: "The court failed to <u>clearly</u> notify the defendant of the suppression <u>hearing</u>."
Supporting facts: "At a 'Motions Hearing' the judge stated 'So we'll be prepared for a "<u>Suppression Motion</u>" on the consent'… The judge <u>did not</u> say '<u>Hearing</u>,' leading the defendant to believe the court was going to decide on the motion and not hold the actual hearing."[35]

GROUND NINE: "The court allowed Detective Monter to testify to the statement given by non-testifying witness 'Hearsay testimony.' "
Supporting facts: "Detective Monter interviewed witness Summerly Rowlands pertaining to any information she might have in regards to the defendant.  Ms. Rowlands gave a statement claiming defendant. Job, & whereabouts previous alleged acts, and future intentions, Detective Monter related these statements to the jury.  Ms. Rowlands did <u>not</u> testify."[36]

GROUND TEN: "The court abused it's discretion when it allowed Detective Monter to give perjured testimony."
Supporting facts: "Detective Monter is the officer who filed the original complaint for the kidnapping, rapes, & felonious assault after the arrest.  He also testified to these facts.  He also was in co-operation with Deputy Von Speigel & the U.S. Marshals Services.  Therefore should have reasonably known the time stamped dates of the original complaints for the address change to know there was no <u>valid</u> warrant issued prior to the defendants arrest."[37]

GROUND ELEVEN: "The court used juvenile adjudication to sentence defendant to maximum sentences (a sentencing factor)."
Supporting facts: "During sentencing the court states 'the offender has a criminal or juvenile adjudication … … He has committed a prior sex offense.' "[38]

*Erdos's motion to dismiss.*  Rather than answer the petition, Erdos asks that I dismiss

the petition based on a statute of limitations defense.[39]   He argues that 28 U.S.C.

---

[35] *Id.* at 4.
[36] *Id.* at 5-6.
[37] *Id.* at 7.
[38] *Id.* at 8.
[39] ECF #16.

§ 2244(d)(1)(A) is the statute of limitations Pryor missed.  By his calculations, the statute required Pryor to file his petition on or before June 1, 2020.[40]  Pryor's petition is filed stamped December 29, 2020, though Pryor placed it into the prison mailing system on December 16, 2020.[41]

Pryor opposes the motion to dismiss by arguing that his delay in filing "was due to denial of adequate law library and materials, and the restrictions and protocols put in place due to the COVID-19 pandemic."[42]  Erdos replies that the reasons Pryor gives for missing the filing deadline do not meet the requirements for equitable estoppel or any other basis under the Anti-Terrorism and Effective Death Penalty Act for tolling the one-year statute of limitations in 28 U.S.C. § 2244(d)(1).[43]

The pending dispositive motion is referred to me by operation of our local rules[44] for a report and recommendation to the District Judge.  For the reasons below, the law requires me to recommend that Erdos's motion be granted and Pryor's petition be dismissed.  In light of this recommendation and because there is nothing Pryor can correct procedurally with regard to the missed filing deadline, I further recommend that Pryor's earlier motion for stay and abeyance[45] be denied.

**III.**

---

[40] *Id.* at 26.
[41] ECF #1-27, at 15.
[42] ECF #18, at 6.
[43] ECF #19.
[44] *See* Local Rule 3.1; non-document orders, 12/30/2020 and 1/4/2021.
[45] ECF #8.

Before delving in, I point out that my statute of limitations analysis focuses on Pryor's first trial on the first five counts of the original six-count indictment.  I do not focus on Pryor's second trial on count six that charged him with the failure to notify a change of address as a registered sex offender.  Pryor never took his direct appeal on the second trial to the Ohio Supreme Court.  He sought to reopen that appeal on September 20, 2018.[46] The court of appeals denied his application,[47] and Pryor again chose to end his appeal there.

Pryor's failure to exhaust issues related to the second trial is of no consequence to his habeas petition or my analysis, however.  As Erdos points out[48] and as Pryor indicates in his petition,[49] Pryor is not seeking habeas relief from his conviction and two-year sentence on count six.  He is instead trying to reverse the 52-year sentence he received for his convictions on counts one through five.  Not surprisingly, the grounds Pryor asserts in his petition relate to his first trial.  Even if that weren't the case, though, any grounds from the second trial Pryor might assert would be time-barred under an analysis like the one I am about to explain, with an even earlier statute of limitations deadline.

*The statute of limitations and statutory tolling.*  The statute of limitations Erdos claims Pryor missed is 28 U.S.C. § 2244(d)(1).  This statute provides four triggers to start the one-year limitations period for petitions like Pryor's:

> **(d)(1)** A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—

---

[46] ECF #16-1, at 245.
[47] *Id.* at 258.
[48] ECF 16, at 23.
[49] ECF #1-27, at 1.

**(A)**  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

**(B)**  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

**(C)**  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

**(D)**  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.[50]

Pryor didn't file his petition one year after the final judgment of June 27, 2017.[51]

That doesn't matter, though.  Pryor can extend the one-year limitations period using statutory tolling under 28 U.S.C. § 2244(d)(2):

**(d)(2)** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.[52]

The rub here is meeting the requirement of a "properly filed application."  "A post-conviction pleading is considered 'properly filed' if 'its delivery and acceptance are in compliance with the applicable laws and rules governing filings.' "[53]  There is also a timeliness component to this requirement.  "When a  postconviction petition is untimely

---

[50] 28 U.S.C. § 2244(d)(1).
[51] ECF #16-1, at 190.
[52] 28 U.S.C. § 2244(d)(2).
[53] *Johnson v. Haviland*, No. 20-3560, 2020 WL 7048695, at *2 (6th Cir. Sept. 2, 2020) (quoting *Artuz v. Bennett*, 531 U.S. 4, 8 (2000)).  *See also Allen v. Siebert*, 552 U.S. 3, 7 (2007) (per curiam).

under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)."[54]  Moreover, collateral petitions or other post-conviction pleadings filed after the statute of limitations has expired do not toll the limitations period.  " 'Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations.' "[55]

In his opposition to Erdos's motion to dismiss, Pryor agrees that 28 U.S.C. § 2244(d)(1) creates "a one-year limitations period for habeas petitions brought by individuals challenging their state-court convictions."[56]  He also stipulates to the accuracy of dates of filing, judgment entries, and decisions.[57]  The next step in the analysis then is to undertake an accurate count of the days the statute of limitations was running.  To ensure accuracy, I used Excel software.  The results of my analysis, which I describe below, are set forth in detail in the Addendum to this report and recommendation.  The Addendum includes the Excel formulas and functions I used in my calculations.

Pryor lost his direct appeal in the state court of appeals on July 9, 2018.[58]  He ended his direct appeal there.  To trigger the statute of limitations, the judgment must become final "by the conclusion of direct review or the expiration of the time for seeking such review."[59]  Pryor could have gone to the Ohio Supreme Court up until 45 days after the

---

[54] *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002)).  *See also Allen*, 552 U.S. at 7.

[55] *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)).  *See also Patterson v. Lafler*, 455 F. App'x 606, 608 (6th Cir. 2012).

[56] ECF #18, at 2.

[57] *Id.* at 2-3.

[58] ECF #16-1, at 318.

[59] 28 U.S.C. § 2244(d)(1).

judgment.[60]  That means July 10, 2018 plus 46 days—August 24, 2018—was the first day of the statute of limitations period.

 *The first statutory tolling period.*  After having run for 27 days, the limitations period stopped on September 20, 2018 when Pryor filed an application to reopen his appeal.[61]  Although the court of appeals denied his application,[62] Pryor timely appealed to the Ohio Supreme Court.[63]  That Court declined to accepted jurisdiction on May 1, 2019.[64]  This decision ended the first statutory tolling period, which lasted 224 days.  On May 2, 2019, the limitations period began again.

 *The second statutory tolling period.*  After having run for 172 days (at this point having run a total of 172+27 or 199 days), the limitations period again stopped on October 21, 2019 when Pryor filed a motion for a delayed appeal in the Ohio Supreme Court.[65]  The Court again denied Pryor relief by denying his motion on December 17, 2019.[66]  The limitations period was tolled for a total of 58 days during this time.  The period again began running on December 18, 2019.  It then ran for 166 days before it expired at midnight on May 31, 2020.  The file stamped date on Pryor's petition is 212 days or slightly more than seven months beyond this deadline.

---

[60] S. Ct. Prac. R. 7.01(A)(1).
[61] ECF #16-1, at 354.
[62] *Id.* at 482.
[63] *Id.* at 491.
[64] *Id.* at 539.
[65] *Id.* at 333.
[66] *Id.* at 353.

Erdos calculated the expiration of the limitations period one day later than my analysis using Excel.[67] He also erroneously states that 166 days of the limitations period ran between the two tolling periods,[68] and that 172 remained after the second tolling period had ended.[69] The accurate numbers using the software formulas shown in the Addendum are the reverse, namely, 172 days went by between the two tolling periods and 166 days remained after the second tolling period had ended. The ultimate result is the same, though. Pryor filed his federal habeas petition slightly more than a half a year late.

Pryor persisted in state courts. On June 26, 2020, he filed a petition with the trial court to vacate or set aside the judgment from his first trial.[70] The trial court denied the petition as untimely,[71] and the court of appeals also rejected Pryor's appeal as untimely.[72] Pryor then filed an appeal with the Ohio Supreme Court slightly more than a month after he had filed his federal habeas petition.[73] None of these filings tolled the federal statute of limitations, however, because Pryor filed them all after the statute of limitations on his federal habeas petition had already expired. Federal law is clear on this point. An application for state post-conviction or other collateral review "tolls the statute of limitations during the period the application is pending, but it cannot revive the statute of

---

[67] ECF #16, at 26.
[68] *Id.* at 25.
[69] *Id.* at 26.
[70] ECF #16-1, at 540.
[71] *Id.* at 554, 563.
[72] *Id.* at 565.
[73] *Id.* at 570.

limitations period (i.e., restart the clock) after the limitations period has expired."[74]

*The statute of limitations and equitable tolling.*

One more narrow avenue remains to excuse the missed filing deadline: equitable tolling. "The doctrine of equitable tolling allows courts to toll a statute of limitations when 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.' "[75] This doctrine "is used sparingly by federal courts,"[76] and places the burden on Pryor to prove he is entitled to its application.[77] Pryor must make a two-part showing: (1) he has pursued his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing.[78] A showing of actual innocence could also lead to equitable tolling,[79] but Pryor does not argue this alternative.

The exhibits to Pryor's opposition brief are pieces of a picture he hopes supports equitable tolling. When sorted out, though, the pieces paint a different picture from the one Pryor wishes me to see. This is especially so when I use the Addendum to shed light on what Pryor did and didn't do to pursue his rights in federal court. Let's begin with Pryor's exhibits.

---

[74] *Patterson*, 455 F. App'x at 608 (citing *Ege v. Yukins*, 485 F.3d 364, 371–72 (6th Cir. 2007)).

[75] *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000)). *See also Holland v. Fla.*, 560 U.S. 631 (2010).

[76] *Robertson*, 624 F.3d at 784 (citing *Graham-Humphreys*, 209 F.3d at 560).

[77] *Robertson, id.* (citing *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)).

[78] *Robertson, id.* (citing *Holland*, 560 U.S. at 649). *See also Pace*, 544 U.S. at 418.

[79] *Patterson*, 455 F. App'x at 609.

Pryor highlights two hurdles he faced in preparing his federal habeas petition: being in the restrictive housing unit in Mansfield Correctional Institution for about the first half of 2020, and general restrictions placed on library book distribution as part of that prison's effort to control the spread of COVID-19.  I assess the second hurdle with some caution because both our Circuit[80] and this Court[81] have rejected the pandemic as a ground for habeas relief or other civil relief.  The context of Pryor's argument, though, is different insofar as he blames his late petition filing on the pandemic restrictions in prison.

Pryor contends that "[i]mmediately after receiving [on December 24, 2019] the notification" of the Ohio Supreme Court's order denying his motion for a delayed appeal, he "attempted to research and prepare for a petition for habeas corpus (see 'Exhibit E'), which is of a request made prior to Jan 22nd.  At the time I was in restrictive housing (RH) and "RH" does not have the same access to the law library and materials as general population inmates.  Due to these policies the petitioner was incapable of obtaining the proper materials to prepared for the habeas corpus petition."[82]

Pryor explains, for example, that inmates in this restrictive housing unit did not have access to electronic tablets, which meant he did not have access to Lexis Nexis when legal

---

[80] *See*, *e.g.*, *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020).
[81] *See*, *e.g.*, *Mighty v. Williams*, No. 4:20-CV-2188, 2021 WL 795673 (N.D. Ohio Mar. 2, 2021); *Harden v. Williams*, No. 4:20CV1607, 2021 WL 463274, at *1–2 (N.D. Ohio Feb. 8, 2021); *Day v. Chambers-Smith*, No. 4:20CV1583, 2021 WL 395816, at *3–4 (N.D. Ohio Feb. 4, 2021); *Johnson v. Chambers-Smith*, No. 4:20CV1361, 2021 WL 308100, at *2 (N.D. Ohio Jan. 29, 2021); *Mitchell v. Williams*, No. 4:20 CV 2086, 2021 WL 211535, at *1–2 (N.D. Ohio Jan. 20, 2021); *Durham v. Williams*, No. 1:20-CV-1138, 2020 WL 8705781, at *2 (N.D. Ohio Aug. 28, 2020).
[82] ECF #18, at 3-4.

books were not allowed to go into the various housing units.[83]  A note written on April 7, 2020 apparently by a corrections officer explains that one of the prison directives meant that "law library books are not allowed in units [presumably including the restrictive housing unit] during COVID-19.  You may request 2 cases copies [sic] only to use for your paperwork."[84]

We learn from Exhibit E—the same exhibit Pryor highlighted in his opposition brief—that as early as January 27, 2020, he was looking for a book from MANCI's law library entitled "Habeas Corpus," but the book was then checked out to another inmate in his unit.[85]  Pryor gives no explanation as to why he couldn't borrow the book from that inmate, especially since the pandemic restrictions were still a couple of months away at that point.

Exhibit F tells us that in early February 2020, Pryor asked whether he should be filing his federal habeas petition under § 2255 or § 2254 (the answer back is § 2254), and requested a response "as soon as possible" because "I've already started my 1 year filing timeline."[86]  Ten days later, Pryor asks for a list of all the legal books available to RH inmates.  "I've had issued to me the book titled judicial/civil rules of procedure.  Can I have the next available book or any book pertaining to heabus [sic] corpus petitions and/or citations?"[87]  Prison staff responded: "you also stole a book that has since been recovered

---

[83] ECF #18-3, at 1.
[84] ECF #18-4, at 1.
[85] ECF #18-5, at 1.
[86] ECF #18-6, at 1.
[87] ECF #18-8, at 1.

that was left for another inmate.  That book is currently in his possession.  You will have to wait until it's returned."[88]

On March 6, 2020, Pryor complained about how the librarian had failed to respond to his kites that pertained to legal issues and to regular issues.  He apparently had asked how many legal books the library had for RH inmates pertaining to habeas corpus because, as he reports, "im [sic] in the process of filing mine."[89]  He noted that he would appreciate timely responses "regarding my legal questions and materails [sic] (books) as my appeal is a time sensitive matter."[90]

The response from prison staff reads in part: "On March 2, 2020 you requested via a kite a legal book and a Federal Habeas Corpus Practice and Procedure was provided to you.  There is a small number of books to be shared by RH inmates.  If someone is currently using the book you would like, you have to wait until the other person is done."[91]

On March 9, 2020, Pryor requested "a copy of a motion for post-conviction," and asked three legal questions:

> Q#1 Do I send the post-conviction motion to the same court of the direct appeal?
> Q#2 Or do I send it to the Ohio Supreme Court the one that denied my final state appeals?
> Q#3 Does the time on my year for filing for my heabus [sic] corpus pause upon filing the post-conviction motion?[92]

---

[88] *Id.*
[89] ECF #18-2, at 1.
[90] *Id.*
[91] *Id.*
[92] ECF #18-9, at 1.

Prison staff responded: "You file your post-conviction with the common pleas court. The time for your <u>habeas</u> corpus still runs.  The post-conviction is separate from your regular appeal process."[93]

Pryor claims to have attempted to research and prepare his federal habeas petition "[i]mmediately after receiving" notice that the Ohio Supreme Court had rejected his appeal in December 2019.[94]  Nine months later at the end of September 2020,[95] he attempted to file in this Court a "Motion for Extension & Notice of Appeal."  In it, Pryor requests this Court to grant him "the time extension and excuse any exceeded time-lines."[96]  In a letter dated October 20, 2020, an operations specialist from our Office of the Clerk of Court wrote:

> It appears you are trying to "Appeal from Stark County Court of Common Pleas," to the US District Court.  In order to do that, you have to file a new case, enclosed is the paperwork to file a 2254 habeas petition.  Please complete the paperwork and return to the above address."[97]

Pryor finally filed his federal habeas case two months later.

Does Pryor carry his burden for equitable estoppel with these pieces of the picture? Cast in the language of the governing law, do these pieces of the picture show that Pryor diligently pursued his federal habeas rights? And do they show that an extraordinary circumstance stood in his way and prevented timely filing? The answer to both parts of the

---

[93] *Id.*
[94] ECF #18, at 3.
[95] ECF #18, at 5; ECF #18-1, at 3.
[96] ECF #18-1, at 3.
[97] ECF #18-1, at 1.

18

standard is no.  In making this finding, I rely on the timeline analysis in the Addendum and the record before me.

Pryor seeks to cast this story as one involving a state prisoner who tried to do the right thing by demanding law books and asking legal questions and filing motions with this Court just in case he was missing the filing deadline.  That narrative, though, leaves too many unanswered questions.

If Pryor took immediate steps starting in late December 2019 to prepare his petition, why did it take him a year to get it done and filed? He argues that the restrictions placed on him while in the restrictive housing unit at MANCI and subsequent prison restrictions on law book distribution to try to control the spread of COVID-19 caused him to wait so long.  But his own exhibits tell us that the prison librarian did give him at least some of the law books he had requested, that another book he sought was with one of the inmates in his own housing unit, and that he eventually gained access to Lexis Nexis on June 24, 2020 shortly after he was transferred from MANCI to the Southern Ohio Correctional Facility.[98]

When the second statutory tolling period ended and the limitations period began running on December 18, 2019, Pryor still had 166 days or over five months to file timely a federal habeas petition by midnight on May 31, 2020.  Why did he wait four more months to attempt to file anything with this Court if he knew in January 2020, as he acknowledges he did, that his one-year limitations period was running and the legal work he was doing pro se was time-sensitive? He blames his tardiness on restrictive housing and COVID-19

---

[98] ECF #18, at 5.

rules.  But then how did he manage to file in the state trial court on June 26, 2020 a petition to vacate or set aside the judgment in his criminal case?[99] Or the notice of appeal on December 7, 2020 when the state trial court denied his petition?[100] And why go through these hoops in state court when he knew that his federal habeas petition was time-sensitive and needed to be filed under a timeline that was already running?

We now have the benefit of having Pryor's federal habeas petition in hand.  The grounds it raises are virtually identical—indeed sometimes using the same language verbatim—as the grounds found in the application he filed on September 20, 2018 in the state court of appeals to reopen his earlier appeal.[101]  The language in Pryor's federal habeas petition is also virtually identical to the language in his memorandum in support of jurisdiction he filed in the Ohio Supreme Court on February 19, 2019.[102]  Why then wait until December 2020 to file a document he knew is time-sensitive when all he needed to do (ultimately did) was to copy the arguments from documents he had already prepared over two years earlier? Pryor never alleges that either the restrictive housing rules or the pandemic restrictions prevented him from gaining access to his earlier legal materials.

Moreover, if he learned from a corrections officer in early February 2020 that his federal habeas petition would need to be filed under § 2254 and he already knew that that filing is time-sensitive, why didn't he ask for the petition form right away? The Office of the Clerk of Court mailed him the petition form in October 2020, but the court employee

---

[99] ECF #16-2, at 540.
[100] *Id.* at 558.
[101] *Compare* ECF #16-1, at 354, 357-67 with ECF #1-27, at 5-10 and ECF #1-5, 1-9.
[102] *Compare* ECF #16-1, at 493, 496-509 with ECF #1-27, at 5-10 and ECF #1-5, 1-9.

did so not because Pryor requested it but because the court employee thought Pryor was on the wrong track with the document he sought to file. Pryor never alleges that he did not have access to the proper § 2254 form earlier, whether under lockdowns or not.

All he needed to do was to get a copy of the § 2254 form, fill it out by copying the grounds from his legal materials from a couple of years earlier, and mail it to this Court. That appears to be what he ultimately did in December 2020. No part of his narrative explains why he needed to wait so long to do that, especially when he told a corrections officer in one of his kites in early March that he was already in the process of filing his habeas petition.[103] Pryor never alleges that any of the restrictions, whether due to his restrictive housing or the pandemic, impeded in any way his ability to mail documents to courts. Certainly no restrictions prevented him from mailing his letter to this Court's Office of the Clerk in September 2020[104] or mailing his petition to vacate or set aside the judgment to the state trial court in June 2020[105] or mailing his notice of appeal to the Ohio Supreme Court in December 2020.[106]

The better, simpler narrative that fits the pieces of the story together is the one that commonly plagues pro se petitioners in federal habeas cases across the country: Pryor miscalculated the filing deadline. His exhibits and his brief opposing the motion to dismiss show that he knew in late December 2019 that the applicable statute of limitations was one

---

[103] ECF #18-2, at 1.
[104] ECF #18-1.
[105] ECF #16-1, at 540.
[106] *Id.* at 558.

year and it was running.  All his references are to a one-year timeline.[107]  He failed to take into account correctly how statutory tolling works under 28 U.S.C. § 2244(d)(2).  He failed to recognize that the statute of limitations tolled only when "a properly filed application" is pending.  In other words, the statute started and stopped, and started and stopped, and started again in his case.

At least three scenarios, or a combination of them, explain Pryor's late filing.  Pryor possibly thought he had one year from December 2019 to file his petition.  He was wrong because of the way § 2244(d)(2) operated in his case, as the Addendum shows.  This error, though, would explain why he put his petition into the prison mail system on December 16, 2020—just one day before the one-year anniversary of his last unsuccessful appeal to the Ohio Supreme Court.

Alternatively, Pryor possibly thought his June 2020 petition to vacate or set aside the judgment in the state court of appeals tolled the statute of limitations and bought him more time.  Or Pryor possibly knew he had missed the deadline, but thought he could claw back some time with that particular state court filing.  These last two scenarios would explain why he mentioned in paragraph 18 of his federal habeas petition entitled "TIMELINESS OF PETITION":

> My last denial of appeal was December 17, 2019.  In June [2020] I filed a properly filed post-conviction motion that as of today is still pending Oct. 10, 2020.  However, while in Mansfield Correctional restrictive house unit (RH), the appellant was denied the proper legal materials to be aware of the 30-day notice of appeal requirement. Also the COVID-19 pandemic doesn't allow prisoners legal books. So in that regard I would respectfully request the court to excuse any

---

[107] *See*, *e.g.*, ECF #18-6, at 1; ECF #18-9, at 1; ECF #18, at 2.

> time lines missed.   And I have not missed my year filing
> requirement.[108]

None of this would have helped Pryor's cause, because he made his state court filings after the statute had already run and he cannot restart the clock once the limitations period has expired[109]—perhaps another legal principle he may have been unaware of.

Like much of federal post-conviction law,[110] the running of the statute of limitations is a complicated business.  I earlier described Pryor's considerable experience representing himself in state court, including on successful motions.  In this instance in federal court, he has a lot of company with other petitioners who also missed the filing deadline because calculating the limitations period is complicated.  But the law's complexity has nothing to do with restrictive housing unit rules or prison policies to control a contagious virus. Neither of the hurdles Pryor highlights created some extraordinary circumstance that stood in the way and prevented him from timely filing his petition.  Pryor may have thought he was being diligent, but he was wrong on the law.  To give him a pass on the grounds of equitable tolling would mean to use this doctrine generously rather than sparingly as the law requires.

---

[108] ECF #1-27, at 13-14.

[109] *Patterson*, 455 F. App'x at 608 (citing *Ege v. Yukins*, 485 F.3d 364, 371–72 (6th Cir. 2007)).

[110] *Williams v. Burt*, 949 F.3d 966, 972 (6th Cir. 2020) ("Part and parcel of federal habeas corpus litigation is an accompanying bevy of procedural rules and requirements, from myriad common law standards to a variety of federal statutes.  While familiar to the federal courts, application of this body of authority is not always easy or straightforward.") (citing *Thomas v. Romanowski*, 362 F. App'x 452, 455 (6th Cir. 2010) (describing the landscape surrounding habeas procedural bars as a "complicated and changing area of law")).

## IV.

*Other Pending Motion*

Pryor filed with his habeas petition a one-page motion for stay and abeyance.[111]  In it, he prospectively asks to stay the case in the event Ohio law would allow him to correct any procedural missteps that might have prevented full review of his petition.  Erdos does not oppose this motion.

The statute of limitations Pryor missed is a matter of federal law.  It cannot be corrected by staying this case and having Pryor return to state court to address a procedural misstep on his part.  Accordingly, for this reason and in light of my recommendation to grant Erdos's motion to dismiss, I recommend that Pryor's motion for stay and abeyance be denied.

## V.

Pryor missed the filing deadline for his habeas petition by over six months.  Neither statutory tolling nor equitable tolling can save his case.  Accordingly, for the foregoing reasons, I recommend that Erdos's motion to dismiss the petition[112] be granted.  I further recommend that Pryor's motion to stay and abeyance[113] be denied in light of my recommendation to dismiss the petition and because there are no procedural steps Pryor can take to correct his failure to comply with the one-year limitations period in 28 U.S.C. § 2244(d)(1).

---

[111] ECF #8.
[112] ECF #16.
[113] ECF #8.

Dated: August 17, 2021                          s/ William H. Baughman, Jr.
                                                United States Magistrate Judge

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of service of this notice.  Failure to file timely objections within the specified time shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.[*]

---

[*] *See* Local Rule 72.3; *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).