IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| Norman LaFonte Pryor, | Case No. 5:20cv2863 |
| Petitioner, | |
| -vs- | JUDGE PAMELA A. BARKER |
| | Magistrate Judge William Baughman |
| Warden Ronald Erdos, | |
| Respondent | MEMORANDUM OPINION AND ORDER |

This matter is before the Court upon the Report & Recommendation ("R&R") of Magistrate Judge William Baughman, Jr. (Doc. No. 23), which recommends granting the Respondent's Motion to Dismiss Petitioner Norman LaFonte Pryor's Petition for Writ of Habeas Corpus (Doc. No. 16); denying Petitioner's Motion for Stay and Abeyance (Doc. No. 8); and dismissing the Petition as time barred. Petitioner has filed Objections to the R&R. (Doc. No. 24.) For the following reasons, Petitioner's Objections are overruled. The R&R is ADOPTED, Respondent's Motion to Dismiss (Doc. No. 16) is GRANTED; Petitioner's Motion for Stay and Abeyance (Doc. No. 8) is DENIED; and the Petition is DISMISSED.

I.  **Procedural History**

   A.  **Relevant State Court Proceedings[1]**

In August 2016, a Stark County Grand Jury issued an indictment charging Pryor with (1) one count of kidnapping in violation of Ohio Rev. Code § 2905.01(A)(2) and/or (A)(3) (Count 1); (2)

---

[1] As the Magistrate Judge recommends that the Petition be dismissed on the grounds that it is time barred, the Court only sets forth herein that procedural history that is necessary to the resolution of that issue.

three counts of rape in violation of Ohio Rev. Code § 2907.02(A) (Counts 2-4); (3) one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(2) (Count 5); and (4) and one count of failure to provide notice of change of address in violation of Ohio Rev. Code § 2950.05(A)(F)(1) (Count 6).[2] (Doc. No. 16-1 at Exh. 1.) Pryor entered a plea of not guilty to the indictment. (*Id*. at Exh. 2.)

The record reflects that Pryor filed a series of pre-trial motions, both through counsel and *pro se*. By March 2017, Pryor had elected to represent himself at trial. (*Id*. at Exh. 30.) The State then filed a Motion for Competency Evaluation, which the trial court granted. (*Id*. at Exhs. 37, 38.) On May 8, 2017, the trial court held a competency hearing, during which it found that Pryor was competent to stand trial. (Doc. No. 16-2 at PageID#s 1057-1087.)

On May 15, 2017, the matter proceeded to jury trial on Counts 1 through 5 of the Indictment, i.e., the kidnapping, rape, and felonious assault charges. (Doc. No. 16-2 at PageID# 1352.) On May 18, 2017, the jury found Pryor guilty on all five counts. (Doc. No. 16-1 at Exh. 52.) Pryor was tried separately on the charge of notice of change of address as set forth in Count Six of the Indictment. On June 13, 2017, a jury found Pryor guilty of this charge as well.[3] (*Id*. at Exh. 56.)

On June 27, 2017, the state trial court sentenced Pryor to an aggregate prison term of 52 years. (*Id*. at Exhs. 53, 56.)

---

[2] These charges stemmed from the rape and kidnapping of a nursing student in the parking lot of Aultman Hospital in Stark County, Ohio on August 1, 2016. For the state appellate court's summary of the facts, *see State of Ohio v. Pryor*, 2018 WL 3385704 at ** 1-3 (Ohio App. 5th Dist. July 9, 2018).

[3] In the R&R, the Magistrate Judge notes that his statute of limitations analysis focuses on Pryor's trial on the first five counts of the indictment and not on his separate trial as to count six because "Pryor is not seeking habeas relief from his conviction and . . . sentence on count six." (Doc. No. 23 at p. 9.) Pryor does not object to this statement in the R&R. Therefore, like the Magistrate Judge, this Court will focus its analysis on Pryor's conviction and sentence on the first five counts in the indictment.

Pryor, through counsel, filed a notice of appeal to the Fifth District Court of Appeals of Ohio ("state appellate court") on July 10, 2017. (*Id*. at Exh. 63.)  The state appellate court affirmed Pryor's convictions and sentence on July 9, 2018. (*Id.* at Exh. 66.) *See also State of Ohio v. Pryor*, 2018 WL 3385704 (Ohio App. 5th Dist. July 9, 2018).  Pryor did not timely appeal the state appellate court's judgment.

On September 20, 2018, Pryor filed an Application for Reopening under Ohio App. R. 26(B). (Doc. No. 16-1 at Exh. 69.)  The state appellate court denied the Application on the merits on January 18, 2019. (*Id*. at Exh. 70.)  Pryor filed a timely notice of appeal to the Ohio Supreme Court, which declined to exercise jurisdiction on May 1, 2019. (*Id*. at Exhs. 71, 74.)

Several months later, on October 21, 2019, Pryor filed a Motion for Delayed Appeal in the Ohio Supreme Court with regard to the state appellate court decision affirming his conviction and sentence on direct appeal. (*Id*. at Exh. 67.)  The Ohio Supreme Court denied the motion on December 17, 2019. (*Id*. at Exh. 68.)

On June 26, 2020, Pryor filed a Petition to Vacate or Set Aside Judgment of Conviction or Sentence in the state trial court. (*Id*. at Exh. 75.)  The state trial court denied the Petition in a written decision filed October 29, 2020. (*Id*. at Exh. 77.)  Pryor filed a notice of appeal to the state appellate court on December 7, 2020. (*Id*. at Exh. 78.)  The state appellate court issued a Judgment Entry on January 11, 2021 in which it found that Pryor's appeal appeared to be untimely. (*Id*. at Exh. 80.)

Pryor filed a notice of appeal to the Ohio Supreme Court on February 4, 2021, followed by an Amended Notice of Appeal on February 19, 2021. (*Id*. at Exhs. 82, 83.)  According to the public docket, the Ohio Supreme Court declined jurisdiction on April 13, 2021. *See State v. Pryor*, Case No. 2021-0164 (Ohio Supr. Ct. April 13, 2021).

B.  **Federal Habeas Proceedings**

On December 16, 2020,[4] Pryor filed a *pro se* Petition for Writ of Habeas Corpus in this Court. The Magistrate Judge interpreted Pryor's Petition as asserting the following grounds for relief:[5]

>   **GROUND ONE**: "Trial court did not appoint full-time counsel for competency hearing."
>
>   **Supporting facts**: "The state requested a competency hearing. Defendant represented himself at the hearing. Standby counsel did not go over evaluation with the defendant, nor express any opinion on defendant's competency. At the hearing, counsel handed defendant the findings of the report. Defendant prior to hearing filed a motion requesting a separate evaluation by different Dr. at hospital."
>
>   **GROUND TWO**: "Trial court errored in sentencing the defendant to consecutive sentencing."
>
>   **Supporting facts**: "The trial court instructed the jury as follows: 'Before you can find the defendant guilty of kidnapping, you must first beyond a reasonable doubt prove the defendant by force, threat, or deception did remove [victim] … for the purpose of facilitating the commission of a felonious assault and/or rape thereafter… As a element of the crime for the purpose of guilt by the jury. Sentenced consecutively for purposes of punishment."
>
>   **GROUND THREE**: "Violated the right to confront witnesses 6th Amendment."
>
>   **Supporting facts**: "Items collective of the investigation were sent to the BCI crime lab for testing Lindsey Pruneski (analyst) tested items 'only' for the presence of DNA. Did not test the DNA. Counsel on cross-examination attempted to question the analyst regarding DNA. Analyst stated she couldn't answer any questions in regard to the defendants DNA testing. Samuel Troyer also."

---

[4] Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988). While the Petition herein did not arrive at the Court for filing until December 29, 2020, Pryor states that he placed it in the prison mailing system on December 16, 2020. (Doc. No. 1 at 15.) Thus, the Court will consider the Petition as filed on December 16, 2020.

[5] The Magistrate Judge notes that there is "some confusion in the record over the grounds Pryor asserts for federal habeas relief." (Doc. No. 23 at p. 4.) Specifically, the Magistrate Judge states that Pryor raises eleven grounds in his Petition; fourteen grounds at one point in his memorandum in support of Petition; and ten grounds with one ground having five subparts at another point in his memorandum in support of Petition. (*Id*.) In the R&R, the Magistrate Judge identifies the above eleven grounds as having been raised in Pryor's Petition. (*Id*. at pp. 5-7.) In his Objection, Pryor does not contest that these are, in fact, the operative grounds for relief in this action. (Doc. No. 24.) Accordingly, the Court will construe Pryor's Petition as raising the eleven grounds identified in the R&R, as set forth above.

**GROUND FOUR**: "Violation of 4th Amendment, Illegal Search & Seizure."

**Supporting facts**: "The United States Marshals arrested defendant in Atlanta GA. on August 3, 2016. The U.S. Marshal arrest report was filed August 3, 2016. The original complaints for the charges of kidnapping, rape, felonious assault, and FAILURE TO CHANGE ADDRESS were ALL time stamped and filed after the arrest in Atlanta GA. Prior to the arrest no warrants were issued."

**GROUND FIVE:** "Trial court abused its discretion when it denied defendant appropriation of funds."

**Supporting facts**: "The defendant notified the court there was additional male DNA found at the alleged crime scene of an unknown male assailant in the named places by the alleged victim."

**GROUND SIX**: "Counsel gave defendant erroneous legal advice."

**Supporting facts**: "The defense counsel instructed the defendant that if the defendant wanted additional DNA testing, the defendant would have to pay for it himself."

**GROUND SEVEN**: "Counsel gave defendant erroneous legal advice."

**Supporting facts**: "Psychiatrist conducted a competency evaluation on the defendant. There were issues, so the defendant then filed a motion requesting (stipulating) for a separate evaluation by a separate doctor. Defense counsel instructed the defendant that if he proceeded this way he would not be able to self represent. The court denied the motion."

**GROUND EIGHT**: "The court failed to clearly notify the defendant of the suppression hearing."

**Supporting facts**: "At a 'Motions Hearing' the judge stated 'So we'll be prepared for a "Suppression Motion" on the consent'… The judge did not say 'Hearing,' leading the defendant to believe the court was going to decide on the motion and not hold the actual hearing."

**GROUND NINE**: "The court allowed Detective Monter to testify to the statement given by non-testifying witness 'Hearsay testimony.'"

**Supporting facts**: "Detective Monter interviewed witness Summerly Rowlands pertaining to any information she might have in regards to the defendant. Ms. Rowlands gave a statement claiming defendant. Job, & whereabouts previous alleged

acts, and future intentions, Detective Monter related these statements to the jury. Ms. Rowlands did not testify."

**GROUND TEN**: "The court abused it's discretion when it allowed Detective Monter to give perjured testimony."

**Supporting facts**: "Detective Monter is the officer who filed the original complaint for the kidnapping, rapes, & felonious assault after the arrest. He also testified to these facts. He also was in co-operation with Deputy Von Speigel & the U.S. Marshals Services. Therefore should have reasonably known the time stamped dates of the original complaints for the address change to know there was no valid warrant issued prior to the defendants arrest."

**GROUND ELEVEN**: "The court used juvenile adjudication to sentence defendant to maximum sentences (a sentencing factor)."

**Supporting facts**: "During sentencing the court states 'the offender has a criminal or juvenile adjudication … … He has committed a prior sex offense.'"

(Doc. No. 1) (spelling, punctuation, and grammar as in original).  On that same date, Pryor filed a number of *pro se m*otions, including a Motion for Experts and Investigators, Motion for Discovery, Motion to Expand the Record, Motion for Evidentiary Hearing, Motion for Appointment of Counsel, and Motion for Stay and Abeyance.  (Doc. Nos. 3, 4, 5, 6, 7, 8.)

On March 1, 2021, Respondent filed a Motion to Dismiss Pryor's Petition as time barred under the one-year statute of limitations set forth in 28 U.S.C. § 2244(d).  (Doc. No. 16.)  Pryor filed a Response on March 15, 2021, to which Respondent replied on March 29, 2021.  (Doc. Nos. 18, 19.)

On August 2, 2021, the Magistrate Judge issued a series of Orders that denied Pryor's Motions for appointment of counsel, experts/investigators, discovery, expansion of the record, and for evidentiary hearing.  (Doc. Nos. 20, 21.)

Shortly thereafter, on August 17, 2021, the Magistrate Judge issued a R&R, in which he recommended (1) granting Respondent's Motion to Dismiss; (2) denying Pryor's Motion for Stay

6

and Abeyance; and (3) dismissing the Petition as time barred. (Doc. No. 23.) Pryor filed Objections on August 27, 2021. (Doc. No. 24.) Respondent did not file a reply.

## II. Standard of Review

Parties must file any objections to a report & recommendation within fourteen days of service. Fed. R. Civ. P. 72(b)(2). Failure to object within this time waives a party's right to appeal the district court's judgment. *See Thomas v. Arn*, 474 U.S. 140, 145 (1985); *United States v. Walters*, 638 F.2d 947, 949-950 (6th Cir. 1981).

When a petitioner objects to a magistrate judge's resolution of a dispositive matter, the district court reviews those objections *de novo*. Fed. R. Civ. P. 72(b)(3). Specifically, a district judge:

> must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id*. "A party who files objections to a magistrate [judge]'s report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court 'with the opportunity to consider the specific contentions of the parties and to correct any errors immediately.'" *Jones v. Moore*, 2006 WL 903199 at * 7 (N.D. Ohio April 7, 2006) (citing *Walters*, 638 F.2d at 949–50).

When a party fails to raise a specific objection to a finding of a magistrate judge on a dispositive matter, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. 72(b)(3), Advisory Committee Notes. *See also Thomas*, 474 U.S. at 150 (stating that "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.")

**III.     Analysis**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides a one-year limitations period in a habeas action brought by a person in custody pursuant to the judgment of a State court. Under 28 U.S.C. § 2244(d)(1), the limitation period runs from the latest of--

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In the R&R, the Magistrate Judge concludes that Pryor's Petition is untimely under § 2244(d)(1)(A) because it was filed more than a year after the date on which Pryor's conviction and sentence became final by conclusion of direct review or the expiration of the time for seeking such review. (Doc. No. 23 at pp. 11-13.) Pryor does not raise any specific Objection to this conclusion and, therefore, the Court reviews the Magistrate Judge's findings and conclusions as to this issue for clear error. For the following reasons, the Court finds no clear error in the Magistrate Judge's conclusion that Pryor's Petition was not filed within the statutory limitations period.

As discussed above, the record reflects that Pryor's conviction and sentence became "final" for purposes of § 2244(d)(1)(A) on August 23, 2018, i.e., forty-five (45) days after the state appellate court issued its July 9, 2018 decision affirming his conviction and sentence on direct appeal and the

8

time to file a timely notice of appeal with the Supreme Court of Ohio expired. Accordingly, the limitations period began to run the following day, i.e., on August 24, 2018, and, absent tolling, expired one year later on August 24, 2019.

As the Magistrate Judge correctly noted, however, the AEDPA tolls the one-year limitations period during the time "'a properly filed application for State postconviction or other collateral review . . . is pending.' § 2244(d)(2)." *Evans v. Chavis*, 546 U.S. 189, 191 (2006); *Carey v. Saffold*, 536 U.S. 214 (2002); *accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003). "The time that an application for state post-conviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law." *Id*.

Only "properly filed" applications for post-conviction relief or collateral review toll the statute of limitations, and "a state post-conviction petition rejected by the state court as untimely is not 'properly filed' within the meaning of § 2244(d)(2)." *Allen v. Siebert*, 552 U.S. 3 (2007); *Pace v. DiGuglielmo*, 544 U.S. 408 (2005) ("time limits, no matter their form, are 'filing' conditions, and a state postconviction petition is therefore not 'properly filed' if it was rejected by the state court as untimely"); *Monroe v. Jackson*, 2009 WL 73905 at *2 (S.D. Ohio Jan. 8, 2009), *report and recommendation adopted*, 2009 WL 466379 (S.D. Ohio Feb. 23, 2009). A timely filed state post-conviction matter, however, cannot serve to toll a statute of limitations which has already expired before the motion was filed. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). Section 2244(d)(2)'s tolling provision "does not ... 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is

expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman,* 346 F.3d at 602 (citation omitted).

Here, the record reflects that Pryor filed his 26(B) Application on September 20, 2018. Thus, the limitations period began to run on August 24, 2018 and ran continuously for twenty-seven (27) days until he filed his 26(B) Application on September 20, 2018. The state appellate court denied the Application on the merits on January 18, 2019, Pryor timely appealed, and the Ohio Supreme Court declined to accept jurisdiction on May 1, 2019. The AEDPA statute of limitations was, therefore, tolled from September 20, 2018 until May 1, 2019. The limitations period began to run anew on May 2, 2019 and continued to run for another one hundred and seventy-two (172) days until October 21, 2019, when Pryor filed his Motion for Delayed Appeal to the Ohio Supreme Court. The limitations period was then again statutorily tolled until the Ohio Supreme Court denied the motion on December 17, 2019.

The limitations period began to run again on December 18, 2019. By this time, the statute of limitations had already run for a total of one hundred and ninety-nine (199) days (i.e., 27 days plus 172 days.) It then ran uninterrupted for another one hundred and sixty-six (166) days (for a total of 365 days) until it expired on June 1, 2020.

The Court notes that Pryor also filed a *pro se* Petition to Vacate or Set Aside Judgment of Conviction or Sentence on June 26, 2020, which was denied by the state trial court on October 29, 2020. The state appellate court dismissed Pryor's appeal and the Ohio Supreme Court declined jurisdiction on April 13, 2021. However, as noted above, state collateral review proceedings can no longer serve to avoid the statute of limitations bar once the limitations period is expired. *See Vroman*, 346 F.3d at 602. Because Pryor's *pro se* post-conviction petition and appeals were filed well after

the statutory limitations period expired (and did not result in a resentencing proceeding), they did not have any further tolling effect.

As the statutory limitations period expired on June 1, 2020 and Pryor did not file his habeas petition until December 16, 2020, the Court agrees with the Magistrate Judge that the Petition is over six months late and untimely under § 2244(d)(1)(A).  Therefore, unless equitable tolling is appropriate, Pryor's Petition is subject to dismissal as time barred.[6]

Although the Petition herein is untimely, the AEDPA statute of limitations period is also subject to equitable tolling.  *See Holland v. Florida*, 560 U.S. 631 (2010).  Equitable tolling "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."  *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010).  *See also Hall v. Warden, Lebanon Correctional Institution*, 662 F.3d 745, 749 (6th Cir. 2011).  However, the equitable tolling doctrine is granted by courts only "sparingly."  *See Robertson*, 624 F.3d at 784.  Moreover, "although 'the party asserting statute of limitations as an affirmative defense has the burden of demonstrating that the statute has run,' the petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011) (quoting *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)).

In order to be entitled to equitable tolling, a habeas petitioner must establish that (1) he has been pursuing his rights diligently; and (2) some extraordinary circumstance stood in his way and prevented timely filing.  *Holland*, 560 U.S. at 649.  *See also Hall*, 662 F.3d at 749; *Griffin*, 308 F.3d

---

[6] Pryor does not argue that the limitations period should commence at a later date for any of the reasons set forth in §§ 2244(d)(1)(B)-(D).

11

at 653. "The diligence required for equitable tolling purposes is reasonable diligence, not maximum diligence." *Holland*, 560 U.S. at 653. That being said, the Sixth Circuit has held that excessive delays in filing lack appropriate diligence. *See e.g. Keeling v. Warden*, 673 F.3d 452, 463–64 (6th Cir. 2012); *Vroman,* 346 F.3d at 605 (stating that a court should be "much less forgiving ... where the claimant failed to exercise due diligence in preserving his legal rights"); *Henson v. Warden, London Correctional Inst*., 620 Fed. Appx. 417, 419 (6th Cir. 2015).

In his response to Respondent's Motion to Dismiss, Pryor argued that he is entitled to equitable tolling because his "delay of filing was due to denial of adequate law library and materials, and the restrictions and protocols put in place due to the Covid-19 pandemic." (Doc. No. 18 at p. 6.) Citing a series of exhibits attached to his Response, Pryor asserted that he received notification of the Ohio Supreme Court's denial of his motion for leave to file delayed appeal on December 24, 2019. (*Id*. at p. 3.) He states that he then immediately attempted to research and prepare his federal habeas Petition by repeatedly requesting legal materials from the prison law library. (*Id*. at pp. 3-4.) Pryor states that he was prevented from obtaining the materials he requested because he had been placed in the restrictive housing unit which "does not have the same access to the law library and materials as the general population inmates." (*Id*. at p. 4.) Pryor states that he was "still being denied access to legal materials" in March 2020, when the law library was "closed down" due to Covid. (*Id*.)

Pryor claims that he was transferred to another facility in June 2020 and that "roughly 2 weeks after arriving [there] . . . the petitioner received a tablet that allowed access to Lexis Nexis." (*Id*. at p. 5.) Several months later, on September 29, 2020, Pryor sent a document captioned "Motion for Extension & Notice of Appeal" to the Clerk of Courts, U.S. District Court, Northern District of Ohio, in which he requested an extension of time to file a habeas petition due to "inadequate law library"

and Covid restrictions. (Doc. No. 18-1 at PageID#s 2507-2508.) On October 20, 2020, the Clerk's Office sent Pryor a letter in response, in which it advised him that he needed to file a "new case" and provided him with the paperwork to file a § 2254 habeas petition. (*Id*. at PageID# 2506.) The record reflects Pryor filed the instant Petition nearly two months thereafter, on December 16, 2020. (Doc. No. 1.)

After conducting a careful review of Pryor's arguments and the exhibits attached to his response brief, the Magistrate Judge concluded that Pryor had not demonstrated that he was entitled to equitable tolling. (Doc. No. 23 at pp. 14-23.) The Magistrate Judge noted that, while Pryor claims the facility failed to provide requested legal materials, Pryor's own Exhibits show that the prison law librarian did, in fact, provide him with certain legal materials (including a book entitled "Federal Habeas Corpus Practice & Procedure") in early March 2020, several months prior to the expiration of the limitations period. (*Id*.) The Magistrate Judge found that Pryor had failed to sufficiently explain why he then waited another eight months to file his Petition (on December 16, 2020), particularly in light of the fact that he was able to successfully file other *pro se* documents in state court in the months prior to then. (*Id*. at p. 21.) Accordingly, the Magistrate Judge concluded that: "Neither of the hurdles Pryor highlights created some extraordinary circumstance that stood in the way and prevented him from timely filing his petition. Pryor may have thought he was being diligent, but he was wrong on the law. To give him a pass on the grounds of equitable tolling would mean to use this doctrine generously rather than sparingly as the law requires." (*Id*. at p. 23.)

Pryor filed Objections on August 27, 2021. (Doc. No. 24.) Therein, Pryor argues, for the first time, that the statute of limitations should be equitably tolled because he "had a complete mental breakdown and attempted to commit suicide." (*Id.* at p. 1.) Pryor states that he was placed on suicide

watch on December 24, 2019 and that "[a]ll of [his] belongings were taken (including legal mail)."[7] (*Id.* at p. 2.) Pryor claims that he began preparing his habeas petition "as soon as he was capable" but that his requests for his legal mail and other "law materials" were denied, both because of his placement in the restricted housing unit and because of the facility's Covid-related restrictions. (*Id.*) Pryor argues that he "was extremely diligent and did everything in his power to pursue the habeas remedy timely" but that "the failure [to timely file] was unavoidable and arose from circumstances beyond [his] control." (*Id.* at p. 3.)

As an initial matter, the Court notes that Pryor did not argue before the Magistrate Judge that the statute of limitations should be equitably tolled because of his mental breakdown and/or lack of access to his legal mail. It is well-established that a habeas petitioner cannot raise new claims or arguments in an objection that were not presented to the Magistrate Judge. *See e.g., Crockett v. Sloan*, 2017 WL 1050364 at * 3 (N.D. Ohio Mar. 20, 2017) ("Petitioner cannot raise new claims or arguments in an objection when those claims or arguments were never presented to the magistrate judge."); *Thompson v. Hooks*, 2016 WL 8674655 at * 2 (N.D. Ohio Sept. 30, 2016); *Roark v. Meko*, 2013 WL 3107654 at * 3 (E.D. Ky. June 17, 2013). Accordingly, the Court will not consider Pryor's newly raised arguments that he is entitled to equitable tolling because of his mental health condition and/or lack of access to his legal mail.

The Court will, however, conduct a *de novo* review of Pryor's argument that he is entitled to equitable tolling because he was reasonably diligent and his lack of access to legal materials

---

[7] In support of this argument, Pryor attaches an undated document to his Objection in which he recounts that he was on suicide watch for 37 days and requests the return of his legal mail and other belongings. (Doc. No. 24-1.) There is a handwritten response on this document that states "You have already filed an ICR regarding this issue." (*Id.*) Pryor does not attach this "ICR" (or any response thereto) to his Objection.

14

constitutes an "extraordinary circumstance" in light of the restrictions imposed as a result of the Covid-19 pandemic and his placement in the restricted housing unit.

With regard to Pryor's argument that equitable tolling is justified because of restrictions imposed as a result of Covid, the Court finds as follows. As Pryor correctly notes, some courts have recognized that the Covid-19 pandemic could lead to an extraordinary circumstance warranting tolling under certain circumstances. *See e.g., United States v. Marshall,* 2021 WL 3854469 at * 2 (E.D. Ky. August 5, 2021), *report and recommendation adopted*, 2021 WL 3844749 (E.D. Ky. August 27, 2021) (collecting cases). *See also Taylor v. Valentine*, 2021 WL 864145 at *2 (W.D. Ky. Mar. 8, 2021); *Hager v. Warden, Ross Correctional Inst*., 2021 WL 2291319 at * 3 (S.D. Ohio June 4, 2021), *report and recommendation adopted*, 2021 WL 2670622 (S.D. Ohio June 29, 2021); *Mix v. Warden, Ohio Reformatory for Women,* 2021 WL 977875 at * 3 (S.D. Ohio March 16, 2021), *report and recommendation adopted*, 2021 WL 1338310 (S.D. Ohio April 9, 2021); *United States v. Smith*, 2020 WL 4016242 at *2 (D. Md. July 16, 2020). However, a petitioner seeking tolling on such a basis must still demonstrate fact-specific circumstances related to the pandemic that hindered his ability to timely file a habeas petition. *See Chapman-Sexton v. United States*, 2021 WL 292027 at *3 (S.D. Ohio Jan. 28, 2021), *report and recommendation adopted*, 2021 WL 982718 (S.D. Ohio Mar. 16, 2021) (observing the court's prior recognition that Covid-19 presented an "extraordinary circumstance" generally but concluding that it did not in that particular case because the petitioner failed to adequately explain why Covid-19 prevented him from timely filing his petition); *Marshall*, 2021 WL 3854469 at * 2 -3 (same).

Here, the Court finds that Pryor has failed to demonstrate that equitable tolling is warranted because of restrictions imposed as a result of Covid. As noted above, Pryor acknowledges that he

became aware of the Ohio Supreme Court's denial of his motion for delayed appeal on December 24, 2019. More than two months passed between that date and the institution of pandemic-related restrictions in March 2020.[8] Pryor does not allege or demonstrate that the prison law library imposed any Covid-related restrictions on access to legal materials during this more than two-month period. Moreover, Pryor's own Exhibits show that the prison law library did, in fact, provide him with legal materials relating to his federal habeas petition in early March 2020, including a book entitled Federal Habeas Corpus Practice & Procedure. (Doc. No. 18-2 at PageID# 2509.) While Pryor complains generally that Covid prevented him from having access to other, unidentified legal materials, he fails to sufficiently explain what additional materials he needed or why lack of access to those materials actually prevented him from timely filing his petition. This is insufficient to carry his burden of demonstrating either that he was diligent or that an "extraordinary circumstance" stood in his way and prevented timely filing.

The Court also rejects Pryor's argument that equitable tolling is warranted due to the alleged lack of access to legal materials resulting from his placement in a restricted housing unit. As the Sixth Circuit has noted, "[c]ourts have consistently held that general allegations of placement in segregation and lack of access to legal materials are not exceptional circumstances warranting equitable tolling, especially where a petitioner does not sufficiently explain why the circumstances he describes prevented him from timely filing a habeas petition[.]" *Andrews v. United States*, 2017 WL 6376401 at *2 (6th Cir. Dec. 12, 2017). *See also Hall v. Warden*, 662 F.3d 745, 751 (6th Cir. 2011) (finding that petitioner's *pro se* status, limited law-library access and lack of access to trial

---

[8] Notably, the Exhibits attached to Pryor's response brief show that he was aware that the filing of his federal habeas petition was a "time sensitive matter" and that there was a one-year filing deadline. *See* Doc. No. 18-2 at p. 1; Doc. No. 18-6 at p. 1.

16

transcript were not sufficient to warrant equitable tolling); *Hager*, 2021 WL 2291319 at * 3 (same); *Atkins v. Turner*, 2016 WL 922126 at * 6 (N.D. Ohio Feb. 9, 2016) ("Atkins's allegedly limited access to the law library and other legal materials, even if more restrictive than at other institutions, does not entitle him to equitable tolling."); *Kelly v. Lee*, 2018 WL 4558592 at * 4 (M.D. Tenn. Sept. 21, 2018) ("Even if Petitioner's access to the law library and other legal materials may have been more restricted than general population inmates, that alone does not entitle him to equitable tolling.")  Here, again, Pryor fails to cite any fact specific circumstances related to his placement in a restricted housing unit that prevented him from timely filing the instant petition, beyond a general lack of access to legal resources.  As numerous courts in this District have held, this is not sufficient to warrant equitable tolling.

Finally, the Court rejects any suggestion that Pryor's *pro se* status and/or ignorance of the law constitute "extraordinary circumstances" warranting equitable tolling. The Sixth Circuit has repeatedly held that "ignorance of the law alone is not sufficient to warrant equitable tolling." *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991).  *See Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004); *Allen v. Bell*, 250 Fed. Appx. 713, 716 (6th Cir. 2007); *Taylor v. Palmer*, 623 Fed. Appx. 783, 789 (6th Cir. 2015).  *See also Johnson v. United States*, 544 U.S. 295, 311 (2005) ("[w]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness"); *Patrick v. Bunting*, 2015 WL 10488878 at * 9 (N.D. Ohio Dec. 29, 2015), *report and recommendation adopted*, 2016 WL 1047231 (N.D. Ohio March 16, 2016).  Moreover, courts within this Circuit have found a petitioner's *pro se* status and lack of legal training are similarly insufficient.  *See e.g., Keeling*, 673 F.3d at 464 ("Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance

17

and to excuse his late filing"); *Burden v. Bunting*, 2016 WL 5417834 at * 6 (N.D. Ohio July 15, 2016) ("Courts have uniformly held that neither a prisoner's *pro se* status nor his lack of knowledge of the law constitute extraordinary circumstances justifying equitable tolling").

Accordingly, and under the circumstances presented, the Court finds that Pryor has failed to demonstrate that either his *pro se* status, lack of legal training, and/or lack of access to legal materials constitute extraordinary circumstances justifying equitable tolling. In sum, because Pryor failed to exercise his rights diligently and no extraordinary circumstance prevented him from filing the instant Petition, the Court finds, upon *de novo* review, that equitable tolling is not warranted in this case.[9]

Lastly, the Magistrate Judge recommends that Pryor's Motion for Stay and Abeyance (Doc. No. 8) be denied because the statute of limitations is a matter of federal law and Pryor's untimeliness "cannot be corrected by staying this case and having Pryor return to state court to address a procedural misstep on his part." (Doc. No. 23 at p. 24.) Pryor does not object to this recommendation. Upon review, the Court finds no clear error. Therefore, the Magistrate Judge's recommendation is adopted and Pryor's Motion for Stay and Abeyance is denied.

IV. **Conclusion**

For the foregoing reasons, Petitioner's Objections (Doc. No. 24) are without merit and overruled. Respondent's Motion to Dismiss (Doc. No. 16) is GRANTED; Petitioner's Motion for Stay and Abeyance (Doc. No. 8) is DENIED; and the Petition is DISMISSED. Further, the Court

---

[9] As noted *supra*, on September 29, 2020, Pryor sent a pleading captioned "Motion for Extension & Notice of Appeal" to the Clerk of Courts, N.D. Ohio in which he requested an extension of time to file a habeas petition due to his lack of access to legal materials as a result of Covid. (Doc. No. 18-1 at PageID#s 2507-2508.) The Clerk's Office sent Pryor a letter on October 20, 2020, enclosing a form 2254 petition and advising him that he had to "file a new case" by completing the form and returning it for filing. (*Id.* at PageID# 2506.) Pryor does not argue that the Court erred in failing to construe his September 2020 filing as a protective habeas petition. Nor did he raise that issue before the Magistrate Judge. Moreover, even if his September 2020 filing had been construed as a protective habeas petition, Pryor's Petition would still have been untimely since the statute of limitations expired on June 1, 2020.

18

certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**

Date: September 17, 2021

    *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE